ANN SWANSON, ADMINISTRATRIX (ESTATE OF GROVER BRESSERT, SR.), ET AL. *v.* CITY OF GROTON ET AL.
(AC 29331)

Flynn, C. J., and Robinson and Lavery, Js.

---

850

Argued April 30—officially released September 8, 2009

*Robert I. Reardon, Jr.*, with whom was *Joseph M. Barnes*, for the appellants (plaintiffs).

*Andrew M. Dewey*, for the appellees (defendants).

*Opinion*

FLYNN, C. J. This case involves a tragic turn of events, which left one man, Grover Bressert, Sr., dead, after being fatally stabbed by Marcelino Lasalle at the Rand Lodge, a rooming house, in Groton. The plaintiff Ann Swanson, acting as the administratrix of the estate of Grover Bressert and as the mother and next friend of the minor children of herself and Bressert,[1] appeals from the summary judgment of the trial court rendered in favor of the defendants, the city of Groton and Jad Bickford, a Groton police officer. On appeal, the plaintiff claims that the court improperly: (1) concluded that governmental immunity barred her negligence claims; (2) rendered judgment in favor of the defendants on her claim of failure to train and supervise; (3) rendered

---

[1] Because Ann Swanson also brought this action on behalf of the two minor children she shared with Bressert, for simplicity, we refer to her as the plaintiff.

judgment in favor of the defendants on her claim of loss of parental consortium; and (4) denied her motion for articulation and reconsideration. We affirm the judgment of the trial court.

The record, viewed in the light most favorable to the nonmoving party for purposes of reviewing the court's rendering of summary judgment; see *Rivers* v. *New Britain*, 288 Conn. 1, 10–11, 950 A.2d 1247 (2008); reveals the following relevant facts and procedural history. Bressert was the manager of the Rand Lodge and, on June 22, 2002, he told Lasalle, who was a tenant at the Rand Lodge, that Lasalle was going to be evicted because of his harassing and threatening behavior toward others while intoxicated. Shortly thereafter, Lasalle was seen outside the Tollgate Laundry (laundry) "very wobbly and unsteady" and engaging in harassing or threatening behavior. An employee of the laundry, Adam Werber, telephoned the Groton police department, asking for assistance because he did not know if Lasalle was "going to start trouble." The dispatcher indicated that he would send someone to assist. Officer Bickford was dispatched to the laundry where he spoke with Werber and then with Lasalle. The complaint alleged that Bickford found Lasalle "grossly intoxicated" and "engaging in behavior that constituted a public nuisance." Bickford spoke with Lasalle, who informed Bickford that he was heading home to the "Randall House." Bickford knew that Lasalle meant the Rand Lodge, and Bickford then asked Lasalle if he wanted a ride. Initially, Lasalle said yes, but, when Bickford asked him for identification, Lasalle declined the ride, and he refused to identify himself. He then began walking toward the Rand Lodge of his own accord. Bickford determined that Lasalle was intoxicated but not incapacitated, and, therefore, he did not press the matter but allowed Lasalle to leave the scene. Bickford did not believe that Lasalle was a danger to himself or

to others. Lasalle returned to the Rand Lodge, where he later fatally stabbed Bressert.

The plaintiff filed an action against the defendants in ten counts, including various claims of negligence and a claim for loss of parental consortium. The plaintiff alleged, in relevant part, that General Statutes § 17a-683 (b) created a ministerial duty on the part of Bickford to take Lasalle to a hospital or treatment facility because he was incapacitated by alcohol and that Bickford breached that duty. The defendants set forth special defenses that included governmental and qualified immunity. After the court granted the defendants' motion for summary judgment on the complaint, this appeal followed.

"The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A material fact . . . [is] a fact which will make a difference in the result of the case. . . . A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Internal quotation marks omitted.) *Jones* v. *H.N.S. Management Co.*, 92 Conn. App. 223, 226–27, 883 A.2d 831 (2005).

"Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the

facts set out in the memorandum of decision of the trial court. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . .

"Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint . . . [that] [t]he determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to [General Statutes] § 52-557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Citation omitted; internal quotation marks omitted.) *Soderlund* v. *Merrigan*, 110 Conn. App. 389, 393–94, 955 A.2d 107 (2008); see *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 48–49, 881 A.2d 194 (2005).

I

The plaintiff's primary claim on appeal is that the court improperly concluded that governmental immunity barred her claims of negligence. We disagree.

"The tort liability of a municipality has been codified in § 52-557n. Section 52-557n (a) (1) provides that '[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . .' Section 52-557n (a) (2) (B) extends, however, the same discretionary act immunity that applies to municipal officials to the

municipalities themselves by providing that they will not be liable for damages caused by 'negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.' " *Violano* v. *Fernandez*, 280 Conn. 310, 320, 907 A.2d 1188 (2006).

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature. . . . The hallmark of a discretionary act is that it requires the exercise of judgment. . . . In contrast, [m]inisterial refers to a duty [that] is to be performed in a prescribed manner without the exercise of judgment or discretion. . . .

"Municipal officials are immunized from liability for negligence arising out of their discretionary acts in part because of the danger that a more expansive exposure to liability would cramp the exercise of official discretion beyond the limits desirable in our society. . . . Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury. . . . In contrast, municipal officers are not immune from liability for negligence arising out of their ministerial acts, defined as acts to be performed in a prescribed manner without the exercise of judgment or discretion. . . . This is because society has no analogous interest in permitting municipal officers to exercise judgment

in the performance of ministerial acts." (Internal quotation marks omitted.) *Bailey* v. *West Hartford*, 100 Conn. App. 805, 810–11, 921 A.2d 611 (2007).

A

First, the plaintiff argues that Bickford's duty was ministerial in nature because § 17a-683 (b) mandates certain actions on the part of the police and, more specifically in the context of this case, on the part of Bickford. She argues in her brief that the language of the statute is plain and unambiguous and that it clearly mandates that "an officer who finds a person incapacitated by alcohol *shall* take him into protective custody. . . . [It] requires police officers to take into protective custody any incapacitated person and to have that person brought to a medical treatment facility." (Emphasis in original.) Accordingly, she argues, the police have no discretion when encountering a person who is incapacitated by alcohol. The shortfall in the plaintiff's argument is that it fails to recognize that the officer first must observe that a person "appears to be incapacitated by alcohol," which, we conclude, involves a judgment call.

Section 17a-683 provides in relevant part: "(a) Any police officer finding a person who appears to be intoxicated in a public place and in need of help may, with such person's consent, assist such person to his home, a treatment facility, or a hospital or other facility able to accept such person.

"(b) Any police officer finding a person who appears to be incapacitated by alcohol shall take him into protective custody and have him brought forthwith to a treatment facility which provides medical triage in accordance with regulations adopted pursuant to section 19a-495 or to a hospital. . . ."

Under our statutes, the term "incapacitated by alcohol" is defined as "a condition in which a person as a

result of the use of alcohol has his judgment so impaired that he is incapable of realizing and making a rational decision with respect to his need for treatment . . . ." General Statutes § 17a-680 (11). In contrast, an "intoxicated person" is "a person whose mental or physical functioning is substantially impaired as a result of the use of alcohol or drugs . . . ." General Statutes § 17a-680 (13). Accordingly, for a person to be "incapacitated by alcohol," that person must be incapable of making a rational decision regarding his need for treatment and that inability to make a rational decision regarding his need for treatment must be as a result of his alcohol use. For a person to be intoxicated, he must have substantially impaired physical or mental functions, and those impairments must be the result of his use of alcohol or drugs.

The first question to be resolved in this case is whether a police officer's judgment or discretion is involved when that officer encounters a person who appears to be under the influence of alcohol. We conclude that the police officer finding such a person exercises her or his discretion or judgment when making a determination as to whether the person at issue is intoxicated as the result of his use of drugs or alcohol, is incapacitated by alcohol or whether something else is wrong with the person.

When analyzing the words of a statute, we are mindful that "[i]ssues of statutory construction present questions of law, over which we exercise plenary review. . . . When construing a statute, we first look to its text, as directed by [General Statutes § 1-2z], which provides: 'The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of

the meaning of the statute shall not be considered.' When a statute is not plain and unambiguous, we also seek interpretive guidance from the legislative history of the statute and the circumstances surrounding its enactment, the legislative policy it was designed to implement, the statute's relationship to existing legislation and common-law principles governing the same general subject matter." (Citation omitted.) *Teresa T.* v. *Ragaglia*, 272 Conn. 734, 742, 865 A.2d 428 (2005).

We agree with the plaintiff's argument that the language of § 17a-683 is plain and unambiguous. Accordingly, we ascertain its meaning from its text and from its relationship to other statutes. See id. Pursuant to § 17a-683, when a police officer "find[s]" a person who "appears" to be under the influence of alcohol, he or she must determine whether that person is (1) intoxicated in a public place and in need of help; see General Statutes § 17a-683 (a); (2) incapacitated by alcohol; see General Statutes § 17a-683 (b); or (3) affected by some other problem. After such a determination is made by the officer, further action may be necessary. That initial determination, however, is where the judgment of the officer necessarily comes into play.

Because the statute dictates the responsibility of the officer after he or she "find[s] a person who appears" to be either intoxicated or incapacitated by alcohol, it seems obvious that the person first must appear to the officer to be in an intoxicated or incapacitated condition before any further action might be necessary on the part of the officer. In this case, Bickford found Lasalle to be under the influence of alcohol, and, in Bickford's opinion, Lasalle appeared to be intoxicated and not incapacitated. The officer's assessment necessarily involved a judgment call and, therefore, a discretionary act.

## B

The plaintiff next argues that even if a discretionary act was involved, the identifiable person-imminent harm exception to governmental immunity is applicable in this case. We disagree.

"There are three exceptions to discretionary act immunity. Each of these exceptions represents a situation in which the public official's duty to act is [so] clear and unequivocal that the policy rationale underlying discretionary act immunity—to encourage municipal officers to exercise judgment—has no force. . . . First, liability may be imposed for a discretionary act when the alleged conduct involves malice, wantonness or intent to injure. . . . Second, liability may be imposed for a discretionary act when a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws.[2] . . . Third, liability may be imposed when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *Bailey* v. *West Hartford*, supra, 100 Conn. App. 811. The plaintiff claims that the third exception is applicable in the present case.

"The identifiable person-imminent harm exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state. . . . The exception applies when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm. . . . By its own terms, this test requires three things: (1) an imminent harm; (2) an identifiable victim;

---

[2] The plaintiff does not claim that the first or second exceptions are applicable in this case. Accordingly, we do not consider these exceptions in our analysis.

and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . [T]he failure to establish any one of the three prongs precludes the application of the identifiable person-imminent harm exception . . . ." (Citations omitted; internal quotation marks omitted.) Id., 811–12.

In *Bailey*, we explained two important cases from our Supreme Court that relied "on a public officer's lack of awareness of the imminent harm, to which his or her conduct likely subjected an identifiable victim, as the basis for concluding that discretionary act immunity protected defendants from liability." Id., 812. We first explained that in *Shore* v. *Stonington*, 187 Conn. 147, 150–51, 444 A.2d 1379 (1982), "the plaintiff's decedent was killed by an intoxicated motorist who had been stopped earlier by a police officer but had been allowed to continue to drive despite visible signs of intoxication. Our Supreme Court held that the police officer was shielded pursuant to the doctrine of discretionary act immunity, reasoning, in part, that the police officer could not have been aware that the motorist's conduct threatened an identifiable victim with imminent harm." *Bailey* v. *West Hartford*, supra, 100 Conn. App. 812.

We also explained that in *Doe* v. *Petersen*, 279 Conn. 607, 609–10, 616–20, 903 A.2d 191 (2006), "our Supreme Court addressed the apparentness prong in a case involving a public officer's allegedly negligent response to the plaintiff's failed attempt to inform the public officer that another municipal employee had sexually assaulted her. After explaining the apparentness prong as being grounded in the policy goal underlying all discretionary act immunity, that is, keeping public officials unafraid to exercise judgment, our Supreme Court noted that [i]t surely would ill serve this goal to expose a public official to liability for his or her failure to respond adequately to a harm that was not apparent to

him or her. . . . Accordingly, the *Doe* court held that the public officer was entitled to discretionary act immunity, reasoning that [b]ecause [the public officer] never became aware of the alleged assault, it could not have been apparent to him that his response to the plaintiff's concerns would have been likely to subject her to a risk of harm." (Citations omitted; internal quotation marks omitted.) *Bailey* v. *West Hartford*, supra, 100 Conn. App. 812–13.

In the present case, the plaintiff alleged that Bressert died as a result of Bickford's failure to recognize Lasalle as a person incapacitated by alcohol and by Bickford's failure to take Lasalle to a hospital or to a treatment facility because of his alleged incapacitation. She argues that Bickford should have realized that Bressert, as the manager of the Rand Lodge, would be subject to imminent harm at the hands of Lasalle if Lasalle was not taken to such a facility.

In accordance with the clear precedent from our Supreme Court, however, Bickford would have had to have known that Lasalle was going to attack a specific person, namely, Bressert, when he returned home to the Rand Lodge. Without knowing that Lasalle even had been engaged in some type of a dispute with Bressert, Bickford could not have anticipated Lasalle's actions toward him. Bickford specifically averred that he did not believe that Lasalle was a danger to himself or to others. He further averred that he had no reason to suspect that Lasalle had any weapons on his person. Bickford, to the best of his knowledge, had never met Bressert or Lasalle, had never heard anything about either of them, and he had never been to the Rand Lodge before Bressert's death. Clearly, in this case, there neither was an identifiable victim nor a public official to whom it was apparent that his conduct was likely to subject that victim to that harm. See id., 812. Accordingly, the court properly rendered summary

judgment on the plaintiff's claims of negligence, concluding that the doctrine of governmental immunity applied in this case.

## II

The plaintiff next claims that the court improperly rendered summary judgment on her claim that Groton is liable for its failure to train and supervise Bickford in the proper procedures to be employed regarding incapacitated persons pursuant to § 17a-683 (b). She argues that "it is clear that Officer Bickford received training regarding incapacitated persons pursuant to . . . General Statutes § 17a-503," which concerns persons who are a danger to themselves or others because of psychiatric disabilities, but that he clearly never received training as to people incapacitated by alcohol pursuant to § 17a-683 (b). She further argues that the duty to provide training and to establish police procedures is ministerial. In support of this argument, she refers us to one Superior Court case. We conclude that the court properly rendered summary judgment on this count of the complaint.

Our Supreme Court has explained that "[i]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality." (Internal quotation marks omitted.) *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 180, 544 A.2d 1185 (1988). "[T]he great weight of authority [holds] that the operation of a police department is a *discretionary* governmental function." (Emphasis added.) Id., 179.

Furthermore, in this case, the plaintiff has failed to make a sufficient showing in opposition to the defendants' motion for summary judgment that Bickford's training was inadequate. In his affidavit, Bickford attested that he had been trained in accordance with the

rules and regulations of the Connecticut police academy and that he had received all of the training mandated by the Groton police department and the police officer standards and training council. Furthermore, he testified during his deposition that he had received training at the police academy on how to deal with public encounters of intoxicated or incapacitated persons. Bickford also averred that "[b]ased on the training [that] I had received and my experience as a police officer, at the time of my encounter with [Lasalle] I was aware of the authority that I had as a police officer to take a person into protective custody who I believed was incapacitated by alcohol" but that he "believed that [Lasalle] was intoxicated [and] . . . capable of making decisions for himself . . . ." Further, he averred: "Based on the circumstances, and my interactions with [Lasalle], I exercised my discretion as a police officer and made the assessment that [Lasalle], although intoxicated, was not incapacitated and that I did not have the authority to take him into protective custody or to have him transported by ambulance to a hospital." "The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . A party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." (Internal quotation marks omitted.) *Jones* v. *H.N.S. Management Co.*, supra, 92 Conn. App. 226–27.

Nevertheless, even if we were to accept the plaintiff's allegations, she cannot demonstrate how any additional training would have made Bressert an identifiable person subject to imminent harm. Without such a showing, her claim necessarily fails.

### III

The plaintiff also claims that the court improperly rendered summary judgment in favor of the defendants on her claim for loss of parental consortium. She argues that the time is right for Connecticut to recognize the viability of such a cause of action. The defendants argue that even if such a cause were viable, the claim is derivative of the plaintiff's negligence claims, and it must fail because those claims are barred by the doctrine of governmental immunity. We agree with the defendants.[3]

In *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 496, 408 A.2d 260 (1979), our Supreme Court recognized for the first time a cause of action for loss of spousal consortium. In recognizing such a cause of action, the court explained that "because a consortium action is derivative of the injured spouse's cause of action, the consortium claim would be barred when the suit brought by the injured spouse has been terminated by settlement or by an adverse judgment on the merits." Id., 494; see also *Pelletier* v. *Sordoni/Skanska Construction Co.*, 286 Conn. 563, 567 n.1, 945 A.2d 388 (2008) (loss of consortium claim derivate of other claims); *Connecticut Ins. Guaranty Assn.* v. *Fontaine*, 278 Conn. 779, 786, 900 A.2d 18 (2006) (same); *Prescott* v. *Meriden*, 273 Conn. 759, 761 n.2, 873 A.2d 175 (2005) (same); *Champagne* v. *Raybestos-Manhattan, Inc.*, 212 Conn. 509, 555–56, 562 A.2d 1100 (1989) (loss of consortium is "derivative action . . . dependent upon the legal existence of the predicate action"); *Izzo* v. *Colonial Penn Ins. Co.*, 203 Conn. 305, 312, 524 A.2d 641 (1987) ("[l]oss of consortium, although a separate cause of action, is not truly independent, but rather derivative

---

[3] Because we conclude that the court properly rendered judgment on the loss of parental consortium claim on the ground of governmental immunity, we do not analyze the plaintiff's argument that such a cause of action is viable in Connecticut.

and inextricably attached to the claim of the injured spouse").

Accordingly, even if we were to agree that a loss of parental consortium claim should be viable in Connecticut, the viability of such a cause of action necessarily would be dependent on the success of the plaintiff's predicate claims. Because the plaintiff has failed on those claims, the loss of parental consortium claim necessarily fails as well.

## IV

The plaintiff's final claim on appeal is that the court improperly denied her motion for articulation and reconsideration. As to the articulation aspect of her motion, we decline to review the court's ruling on appeal.

"Our rules of practice provide a procedure for appellants seeking an articulation from the trial court as to the factual and legal bases for its decisions. Practice Book § 66-5. If the trial judge denies the motion for articulation, the appellant has a remedy by way of motion for review, which may be filed with this court pursuant to Practice Book § 66-7. This motion for review specifically can be utilized only for those motions for articulation filed pursuant to § 66-5. See Practice Book § 66-7. Section 66-5 of our rules of practice provides in relevant part: 'Any motion for . . . articulation shall be filed within thirty-five days after delivery of the last portion of the transcripts or, if none, after the filing of the appeal, or, if no memorandum of decision was filed before the filing of the appeal, after the filing of the memorandum of decision. . . .' That language of Practice Book § 66-5 makes clear that the motions for articulation under that section may be filed only after the filing of an appeal. See also *Matka Corp.* v. *Automated Material Handling, Inc.*, 34 Conn. App. 723, 724 n.1, 643 A.2d 276 (1994) ('motion for review may be filed with this court pursuant to Practice Book

[§ 66-7] after taking a timely appeal, provided the motion for articulation was filed after the appeal was taken')." *Brycki* v. *Brycki*, 91 Conn. App. 579, 593–94, 881 A.2d 1056 (2005).

The plaintiff filed her motion for articulation directly with the trial court prior to filing her appeal. To obtain review by this court, she would have had to have filed another motion for articulation, this one pursuant to Practice Book § 66-5, after having filed her appeal. See id., 594. Additionally, she would have had to have filed a motion for review pursuant to Practice Book § 66-7 if the trial court, again, denied the motion for articulation. This she did not do, and, accordingly, we are unable to review her claim.

As to the reconsideration aspect of her motion, on appeal, we also decline to review the court's ruling denying reconsideration. "The granting of a motion for reconsideration . . . is within the sound discretion of the court. The standard of review regarding challenges to a court's ruling on a motion for reconsideration is abuse of discretion. As with any discretionary action of the trial court . . . the ultimate [question for appellate review] is whether the trial court could have reasonably concluded as it did." (Internal quotation marks omitted.) *Shore* v. *Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 479, 886 A.2d 837 (2005), cert. denied, 277 Conn. 907, 894 A2d 988 (2006). The plaintiff failed to address the issue of the court's denial of her motion for reconsideration adequately in her brief. She has neither provided this court with meaningful analysis nor has she cited to any authority as to why the trial court abused its discretion in denying her motion. See *Barzetti* v. *Marucci*, 66 Conn. App. 802, 808, 786 A.2d 432 (2001). Accordingly, we deem the issue abandoned.

The judgment is affirmed.

In this opinion the other judges concurred.