******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

WILFREDO TEXIDOR, JR. *v.* CAROL
THIBEDEAU ET AL.
(AC 37349)

Gruendel, Lavine and Mullins, Js.*

*Argued January 14—officially released March 22, 2016*

(Appeal from Superior Court, judicial district of
Hartford, Peck, J.)

*Juri E. Taalman*, with whom, on the brief, was *John
C. Lewis III*, for the appellant (plaintiff).

*Scott M. Karsten*, with whom, on the brief, was *Kateryna Lagun*, for the appellees (defendants).

*Opinion*

LAVINE, J. In this personal injury action, the plaintiff, Wilfredo Texidor, Jr., appeals from the summary judgment rendered by the trial court in favor of the defendants, Carol Thibedeau, a public safety dispatcher, Brian Hill, a police officer and dispatcher, Courtney Grant, a police officer and dispatcher,[1] and the town of West Hartford (town). The plaintiff alleged in his complaint that the individual defendants were negligent in responding to a telephone call his relative, Quintina Texidor,[2] made to the West Hartford Police Department complaining that a group of teenage boys had been harassing her daughter. One of those teenage boys shot the plaintiff, who was visiting the residence before the police arrived, resulting in his having sustained serious personal injuries.

The court rendered summary judgment on the ground that the defendants were entitled to immunity pursuant to General Statutes § 52-557n, and were not subject to the identifiable person-imminent harm exception. See *Cotto* v. *Board of Education*, 294 Conn. 265, 273, 984 A.2d 58 (2009). On appeal, the plaintiff claims that the court erred in determining that (1) there was no genuine issue of material fact that the defendants were engaged in a discretionary act, (2) the defendants were not subject to the identifiable person-imminent harm exception to governmental immunity for discretionary acts, and (3) the town was not liable to the plaintiff for indemnification pursuant to General Statutes § 7-465. We disagree and, accordingly, affirm the judgment of the trial court.[3]

Viewed in the light most favorable to the plaintiff, the record reveals the following facts. The plaintiff alleged in his complaint that on March 29, 2011, at 2:57 p.m., Quintina Texidor called the West Hartford Police Department to report that eight teenage boys were bullying her daughter and requested that a police officer come to her residence at 113 Abbotsford Avenue. The transcript of the call reveals that Quintina Texidor stated that her daughter had been having issues during the prior two weeks with a "clique of guys" and that she had complained to the principal of her daughter's school and to the school's police officer that morning. Quintina Texidor said that the problem was escalating. She further stated: "[S]o now, the same kids that are messing with my daughter in school are coming around my house threatening me and my children. . . . So now, this same clique of kids has been doing this bullying for the past four years at Conard High [School]." She told Thibedeau that the boys referred to themselves as the "NBA" and that "they're looking to jump on my daughter. So now, they're bringing boys walking by my house . . . and threatening us. . . . They said they're going to swing by and air up my house.[4] I said really, so, I'm gonna call and make a report because this is really gonna escalate." (Footnote added.) Thibedeau

asked how the boys made the threat, and Quintina Texidor responded, "[w]alking in front of the house. . . . They just walked up the street." Thibedeau asked for Quintina Texidor's name, and the call concluded with Thibedeau stating, "somebody will see you there shortly."

The plaintiff alleged that after the call concluded, Thibedeau entered the complaint into the police department's computer dispatch system and coded it as a nonemergency juvenile call. Thibedeau believed that based upon the information provided, Quintina Texidor's call was related to an issue her daughter was having in school and was not an active situation at the residence. Hill was responsible for assigning police units to respond to calls made to the public safety dispatcher. After Thibedeau logged the call into the computer dispatch system, it appeared on Hill's computer monitor as a pending call. Hill classified the call as a nonemergency call based upon the description entered into the computer dispatch system. He contacted Officer Art Yepes, the school resource officer at Conard High School, to respond. Yepes, however, was leaving work for the day and was not dispatched. Officer Jeffrey Swank, the patrol officer for the area surrounding Abbotsford Avenue, was unavailable because he was attending to a motor vehicle stop. Thibedeau's and Hill's shifts ended at 3:30 p.m., and they did not communicate any information regarding Quintina Texidor's call to the individuals coming in on the next shift. Grant took over for Hill, and viewed the information on the computer dispatch system. Grant could see that it had been in the system for more than thirty minutes and knew that an officer had not responded, but decided to wait before dispatching an officer. The court reviewed transcripts of the internal affairs investigation in ruling on the defendants' motion for summary judgment. Both Hill and Grant in their interviews stated that the officers in the nearest police cruisers were busy, and that they did not believe that it was prudent to dispatch a cruiser from across the town, or an available traffic patrol cruiser, to respond to a nonemergency call.

The record reveals that at 3:55 p.m., Quintina Texidor called the police again and stated that an officer had not responded and that the boys' threats were escalating. Public Safety Dispatcher Elizabeth Beyus, who took over for Thibedeau on the shift change, entered this information into the computer dispatch system and changed the coding from a nonemergency juvenile call to a disturbance call at 3:56 p.m. Officers were dispatched to Quintina Texidor's residence at 3:57 p.m. At 4:03 p.m., prior to the officers' arrival, Beyus received the first report of a shooting on Abbotsford Avenue. Grant advised the officers to upgrade their response and treat the call as an emergency situation. The plaintiff had been shot by Devante Robinson, one of the teenage boys. The plaintiff was not a resident of 113

Abbottsford Avenue and was there because he previously had agreed to help Quintina Texidor move furniture.[5] Officers arrived on the scene between 4:06 and 4:07 p.m.

On March 28, 2013, the plaintiff served a six count complaint on the defendants,[6] alleging that the individual defendants had breached a ministerial duty in how they classified and responded to Quintina Texidor's initial call. The complaint contained numerous allegations, but the crux of it was that when Thibedeau told Quintina Texidor after her first call that an officer would respond shortly, she created a ministerial duty on the part of the police department to respond immediately, and the individual defendants breached this duty in their subsequent actions by not responding until Quintina Texidor made the second call almost an hour later. The plaintiff alleged that the breach of this duty resulted in his being shot by Robinson. The defendants moved for summary judgment, asserting as one of their special defenses that they were entitled to governmental immunity because the plaintiff's allegations related to the discretionary performance of governmental duties that the individual defendants had carried out in good faith and without malice. On September 10, 2014, the court issued its memorandum of decision rendering summary judgment in favor of the defendants. The court granted the motion as a matter of law, concluding that the defendants were entitled to governmental immunity under § 52-557n because they were engaged in a discretionary act, and the identifiable person-imminent harm exception to immunity was not applicable. This appeal followed after the court denied the plaintiff's motion for reconsideration.

Prior to analyzing the plaintiff's claims on appeal, we set forth the standard of review and relevant legal principles of law. "Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue as to all material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. . . . The party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. See Practice Book §§ [17-44 and 17-45]. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . A motion for summary judgment is properly granted if it raises at least one legally sufficient defense that would bar the plaintiff's claim and involves no triable issue of fact.

. . . Our review of the trial court's decision to grant a motion for summary judgment is plenary." (Internal quotation marks omitted.) *Mills* v. *Solution, LLC*, 138 Conn. App. 40, 45–46, 50 A.3d 381, cert. denied, 307 Conn. 928, 55 A.3d 570 (2012).

The law of this state regarding the liability of municipalities and their agents is well established. "[Our Supreme Court] has previously stated that [a] municipality itself was generally immune from liability for its tortious acts at common law . . . . [The court has] also recognized, however, that governmental immunity may be abrogated by statute. . . . [Section] 52-557n (a) (1) provides in relevant part: Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer, or agent thereof acting within the scope of his employment or official duties . . . . [The court] previously [has] concluded that [t]his language clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune from torts committed by their employees and agents. . . .

"Subdivision (2) of § 52-557n (a), lists two exceptions to the statutory abrogation of governmental immunity. The exception relevant to this appeal provides: Except as otherwise provided by law, a political subdivision shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." (Citations omitted; internal quotation marks omitted.) *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 47–48, 881 A.2d 194 (2005). "The statute thus distinguishes between discretionary acts and those that are ministerial in nature, with liability attaching to a municipality only for negligently performed ministerial acts, not for negligently performed discretionary acts." *DiMiceli* v. *Cheshire*, 162 Conn. App. 216, 224,      A.3d      (2016).

"[Our Supreme Court] has recognized an exception to the discretionary act immunity that allows for liability when the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . . This identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. . . . All three must be proven in order for the exception to apply. . . . The ultimate determination of whether [governmental] immunity applies is ordinarily a question of law for the court . . . [unless] there are unresolved factual issues material to the applicability of the defense . . . [where] resolution

of those factual issues is properly left to the jury." (Citation omitted; internal quotation marks omitted.) *Haynes* v. *Middletown*, 314 Conn. 303, 312–13, 101 A.3d 249 (2014).

I

The plaintiff claims that a genuine issue of material fact exists with respect to whether the individual defendants were engaged in a discretionary act when responding to Quintina Texidor's initial request for police assistance at her residence. The plaintiff argues that when Thibedeau told Quintina Texidor at the end of the call that a police officer would "see [her] there shortly," Thibedeau created a ministerial duty that the defendants breached by not responding to the call until almost an hour later. We disagree. "Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint . . . [that] [t]he determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to . . . § 52–557n (a) (2) (B), turns on the character of the act or omission complained of in the complaint. . . . Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions necessarily involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper." (Footnote omitted; internal quotation marks omitted.) *Bonington* v. *Westport*, 297 Conn. 297, 307–308, 999 A.2d 700 (2010).

"The hallmark of a discretionary act is that it requires the exercise of judgment. . . . If by statute or other rule of law the official's duty is clearly ministerial rather than discretionary, a cause of action lies for an individual injured from allegedly negligent performance. . . . [M]*inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion.*" (Emphasis added; internal quotation marks omitted.) *Mills* v. *Solution, LLC*, supra, 138 Conn. App. 48. "In order to create a ministerial act, there must be a city charter, provision, ordinance, regulation, rule, policy, or any other directive [compelling a municipal employee] to [act] in any prescribed manner." (Internal quotation marks omitted.) *Coley* v. *Hartford*, 140 Conn. App. 315, 323, 59 A.3d 811 (2013), aff'd, 312 Conn. 150, 95 A.3d 480 (2014).

"[I]t is firmly established that the operation of a police department is a governmental function, and that acts or omissions in connection therewith ordinarily do not give rise to liability on the part of the municipality. . . . [T]he failure to provide, or the inadequacy of, police protection usually does not give rise to a cause of action in tort against a city." *Gordon* v. *Bridgeport Housing Authority*, 208 Conn. 161, 180, 544 A.2d 1185 (1988).

"Police officers are protected by discretionary act immunity when they perform the typical functions of a police officer. . . . The policy behind discretionary act immunity for police officers is based on the desire to encourage police officers to use their discretion in the performance of their typical duties. Discretionary act immunity reflects a value judgment that—despite injury to a member of the public—the broader interest in having government officers and employees free to exercise judgment and discretion in their official functions, unhampered by fear of second-guessing and retaliatory lawsuits, outweighs the benefits to be had from imposing liability for that injury." (Citation omitted; internal quotation marks omitted.) *Smart* v. *Corbitt*, 126 Conn. App. 788, 800, 14 A.3d 368, cert. denied, 301 Conn. 907, 19 A.3d 177 (2011).

The plaintiff's argument fails because in objecting to the defendants' motion for summary judgment, he did not present any evidence of a city charter, provision, ordinance, regulation, rule, policy, or any other directive that created a ministerial duty regarding the time in which the officers were to respond to a call for assistance. Furthermore, one of the essential duties of a police department is to receive calls for assistance from the public and to determine the appropriate level of response, which includes the overall priority of calls for assistance. See *Gordon* v. *Bridgeport Housing Authority*, supra, 208 Conn. 180. Thibedeau classified the initial call from Quintina Texidor as a nonemergency juvenile call, which was an inherently discretionary act. See *Smart* v. *Corbitt*, supra, 126 Conn. App. 800–801. The plaintiff, however, claims that the court erred in "concluding that the police dispatcher's promise [to send an officer] was a discretionary act and not a ministerial duty resulting from the discretionary act of determining that help should be sent." (Emphasis omitted.) This claim overlooks the fact that even though Thibedeau stated that the police would respond shortly, the police had to use discretion to assess the emergent nature of the call, to rank it among other requests for assistance then pending, and to consider the availability of police personnel to respond. Hill and Grant exercised their discretion in considering which unit to send, which the trial court recognized by noting that "the interview transcripts of Hill and Grant show that neither officer believed that it was necessary to summon a cruiser from the other part of town or a traffic patrol cruiser to respond to a nonemergency call."

The plaintiff asserts that *Wisniewski* v. *Darien*, 135 Conn. App. 364, 42 A.3d 436 (2012), supports his contention that Thibedeau's statement that police would arrive shortly at Quintina Texidor's residence created a ministerial duty. We disagree. In *Wisniewski*, the plaintiffs brought a negligence action against the town for injuries sustained when a tree fell on the plaintiffs' motor vehicle. Id., 366–67. This court determined that

the record supported the jury's determination that the defendants failed to establish that their duty to inspect, maintain, and remove the tree that fell on the plaintiffs' motor vehicle was discretionary. Id., 380–81. *Wisniewksi* is distinguishable from the present case because in the year leading up to the accident, the town had received several complaints about trees in the vicinity of where the plaintiffs' car was damaged. Id., 366–67. Furthermore, the town tree warden "couched [his testimony] in mandatory language" that "upon receipt of a complaint regarding a potentially hazardous tree, he ha[d] a nondiscretionary duty to perform an inspection." Id., 375. This court thus concluded that "[t]estimony of a municipal official . . . may provide an evidentiary basis from which a jury could find the existence of a specific duty or administrative directive." Id., 374. In the present case, the plaintiff produced no such evidentiary basis that would have allowed a trier of fact to conclude that Thibedeau's statement created a mandatory duty that the police had to respond immediately to Quintina Texidor's call. On the basis of our review of the pleadings and the evidentiary submissions of the parties, we conclude that the court did not err in determining that the individual defendants were engaged in a discretionary act when responding to Quintina Texidor's initial call. We turn to whether the court properly concluded that the defendants were not subject to an exception to governmental immunity.[7]

## II

The plaintiff claims that the court erred in determining that the defendants were not subject to the identifiable person-imminent harm exception to governmental immunity for discretionary acts. The plaintiff asserts that as an invitee and family member of Quintina Texidor, he was a member of an identifiable class of foreseeable victims. This argument is unavailing, as the plaintiff's proposition that invitees are an identifiable class of foreseeable victims, even if confined to family members, would extend the identifiable person-imminent harm exception to an unduly large class of plaintiffs.

As previously stated, the identifiable person-imminent harm exception has three requirements: (1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm. *Haynes* v. *Middletown*, supra, 314 Conn. 312–13. "An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person. . . . The exception is applicable only in the clearest cases. . . . Although the identifiable person contemplated by the exception need not be a specific individual, the plaintiff must fall within a narrowly defined identified [class] of

foreseeable victims." (Citations omitted; internal quotation marks omitted.) *Thivierge* v. *Witham*, 150 Conn. App. 769, 779, 93 A.3d 608 (2014). "[U]nder our case law . . . we have interpreted the identifiable person element narrowly as it pertains to an injured party's compulsion to be in the place at issue . . . ." *Grady* v. *Somers*, 294 Conn. 324, 356, 984 A.2d 684 (2009). Our Supreme Court has emphasized that "[t]he only identifiable class of foreseeable victims that we have recognized for these purposes is that of schoolchildren attending public school during school hours because: they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they were legally required to attend school rather than being there voluntarily; their parents were thus statutorily required to relinquish their custody to those officials during those hours and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions." (Internal quotation marks omitted.) Id., 352.

The rule has been narrowly applied outside of the public school context; id., 353; and the few cases in which a specific plaintiff has been held to be an identifiable victim are largely limited to their facts. For example, in *Sestito* v. *Groton*, 178 Conn. 520, 522–23, 527–28, 423 A.2d 165 (1979), our Supreme Court held that the facts presented a jury question where an on-duty town police officer watched an ongoing physical altercation in a bar's parking lot involving the plaintiff's decedent and did not intervene until after the plaintiff's decedent was shot and killed. "Our Supreme Court . . . has explained that *Sestito* was decided before the current three-pronged identifiable person-imminent harm exception was adopted and its holding is limited to its facts." *Thivierge* v. *Witham*, supra, 150 Conn. App. 780 n.8.

We agree with the trial court that the plaintiff did not allege facts demonstrating that he was a member of an identifiable class of foreseeable victims whom a police officer would know were likely to be subjected to imminent harm given the nature of Quintina Texidor's call. Our Supreme Court has recognized schoolchildren attending public school during school hours as the only identifiable class of foreseeable victims, which is based on public policy reasons and the fact that students are statutorily required to be present on school property. See *Grady* v. *Somers*, supra, 294 Conn. 352. A plaintiff's mere presence as an invitee on the property where he or she sustains an injury is not sufficient to make him or her a member of an identifiable class of foreseeable victims for purposes of the exception to governmental immunity. See *Cotto* v. *Board of Education*, supra, 294 Conn. 279, (determining that director of youth program was not identifiable victim when he slipped in wet bathroom because "any person using the bathroom could have slipped at any time" [emphasis omitted]); see also

*Thivierge* v. *Witham*, supra, 150 Conn. App. 780 (concluding that visitor to dog owner's property who was bitten by dog after municipal officer's alleged failure to enforce restraint order was not identifiable victim because "any number of potential victims could have come into contact with the dog following [the municipal officer's] issuance of the restraint order").

Furthermore, unlike in the distinct factual scenario at issue in *Sestito* v. *Groton*, supra, 178 Conn. 522–23, the individual defendants here had no way of knowing that the plaintiff would be present at Quintina Texidor's home. The analysis in *Swanson* v. *Groton*, 116 Conn. App. 849, 977 A.2d 738 (2009), is instructive as applied to the facts of the present case. In *Swanson*, an individual, Lasalle, who later attacked the plaintiff's decedent, was stopped by a town police officer. Id., 852. The police officer found that Lasalle was intoxicated, but not incapacitated. Id. Lasalle told the officer that he was returning to the rooming house where he was staying, and the officer allowed him to continue on his way. Id., 852–53. Upon returning to the rooming house, Lasalle fatally stabbed the plaintiff's decedent. Id., 853. This court concluded that the plaintiff's decedent was not an identifiable victim because the town police officer had no way of knowing that he would be present at the rooming house, and that Lasalle would attack him. Id., 861. In the present case, the individual defendants similarly had no way of knowing that the plaintiff would be present at Quintina Texidor's residence. The record reflects that the individual defendants were aware only that Quintina Texidor had called for police assistance and that a "clique" of teenage boys was bullying her daughter. The plaintiff was not a resident of the property, and Quintina Texidor did not mention him in either of her calls to the West Hartford police prior to the shooting.

On the basis of our review of the record, we conclude, as a matter of law, that the trial court did not err in determining that the plaintiff was not an identifiable victim, and thus we need not address the other two prongs of the identifiable person-imminent harm exception to governmental immunity. See *Haynes* v. *Middletown*, supra, 314 Conn. 313.

### III

Because the court did not err in rendering summary judgment in favor of the individual defendants, who were the town's employees, the plaintiff's claim that the court erred in concluding that the town was not liable to the plaintiff for indemnification under § 7-465 also fails. For a plaintiff to prevail on an indemnification claim against a municipality, he or she must first allege and prove in a separate count that an employee of the municipality was negligent. *Wu* v. *Fairfield*, 204 Conn. 435, 438, 528 A.2d 364 (1987) ("any municipal liability which may attach is predicated on prior findings of

individual negligence on the part of the employee and the municipality's employment relationship with that individual'').

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In this opinion, we refer to Thibedeau, Hill, and Grant collectively as the individual defendants and individually by name where appropriate.

[2] The trial court's memorandum of decision and the plaintiff's appellate brief refer to Quintina Texidor as the plaintiff's cousin. In his affidavit submitted to the trial court in opposition to the defendants' motion for summary judgment, the plaintiff refers to her as Quintina Wilfredo and calls her his aunt.

[3] The trial court considered the transcripts of Quintina Texidor's telephone calls, as well as the transcripts of interviews with Thibedeau, Hill, and Grant from the West Hartford Police Department's internal affairs investigation. The court also had before it the affidavit of West Hartford police Chief Tracey Gove, and police reports regarding the incident. The plaintiff claims that each of these submissions was inadmissible hearsay. The defendants note that plaintiff did not raise this claim before the trial court in his objection to their motion for summary judgment. The plaintiff raised this claim for the first time in his motion for reconsideration, and the trial court did not address it in denying that motion. The plaintiff did not seek an articulation of the trial court's ruling. See Practice Book § 66-6. Because this claim was not presented to the trial court prior to its rendering summary judgment, and the plaintiff failed to seek an articulation when the trial court did not address it in denying his motion for reconsideration, we decline to review it on appeal. See *Billboards Divinity, LLC* v. *Commissioner of Transportation*, 133 Conn. App. 405, 409–411, 35 A.3d 395, cert. denied, 304 Conn. 916, 40 A.3d 783 (2012).

The plaintiff also claims that there was a genuine issue of material fact as to whether the defendants' actions or omissions were the actual and proximate cause of the plaintiff's injury. Because we conclude that the defendants' were entitled to summary judgment on the ground of governmental immunity, we need not reach the plaintiff's claim regarding actual and proximate cause. See *Stuart* v. *Freiberg*, 316 Conn. 809, 823–25, 116 A.3d 1195 (2015).

[4] The plaintiff alleged that "air up" the house was a reference to shooting at the house with a gun. Thibedeau stated during her interview for the internal affairs investigation that she was not familiar with this term and did not know what it meant.

[5] In his affidavit, the plaintiff stated that the group of teenage boys was already present on the property when he arrived at Quintina Texidor's residence sometime before 4 p.m.

[6] Counts one, three, and five of the complaint sounded in negligence and were directed against Thibedeau, Hill, and Grant, respectively. Counts two, four, and six were directed against the town for indemnification under § 7-465.

[7] The plaintiff also asserts that Thibedeau breached a ministerial duty by entering incorrect information from Quintina Texidor's call into the computer system, namely, by entering the name of the clique of boys as "NPA" instead of "NBA." He also argues that Thibedeau and Hill breached a ministerial duty by failing to inform those coming in on the next shift of the ongoing situation. Notwithstanding that Quintina Texidor's call was available in the computer dispatch system, the plaintiff's claim fails because he has not provided evidence of any city charter, provision, ordinance, regulation, rule, policy, or other directive that created a ministerial duty and compelled the defendants to act in the manner he alleges that they should have acted. See *Coley* v. *Hartford*, supra, 140 Conn. App. 323.