******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# ARTHUR M. DEMATTIO *v.* ROBERT PLUNKETT ET AL.
## (AC 41283)

Moll, Devlin and Pellegrino, Js.*

*Syllabus*

The plaintiff, who had been hired by the defendants to perform certain home construction site work, sought to recover damages for, inter alia, breach of contract, after the defendants failed to make an installment payment under the parties' contract. The contract set forth a schedule of six installment payments. Work was scheduled to begin on March 9, 2015, and was to be completed on May 11, 2015. As a result of delays, work did not begin until May, 2015. In October, 2015, the plaintiff ceased working for the defendants; the plaintiff maintained that he was terminated whereas the defendants claimed the plaintiff walked off the job. The plaintiff claimed he was entitled to the fourth installment payment. The defendants then hired V Co. to complete the work. The plaintiff thereafter brought the present action seeking damages for the defendants' failure to remit the fourth installment payment. The defendants filed a counterclaim. Following a trial to the court, the trial court rendered judgment for the defendants on the complaint and on their counterclaim, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly determined that the contract violated the Home Improvement Act (§ 20-418 et seq.) and was unenforceable against the defendants; the plaintiff failed to follow the statutorily (§ 42-135a (1) and (2)) prescribed language and form for the cancellation notice in the contract and failed to furnish the defendants with a detachable notice of cancellation as required by § 42-135a (2) and (3), and these failures amounted to material noncompliance with the act.

2. The trial court's finding that the plaintiff caused the delay in the completion of the work was not clearly erroneous; the court had before it the testimony of the defendants' expert regarding the percentage of work completed by the plaintiff and how much work was left to complete, which the court was free to credit, and the court did not have to credit the plaintiff's testimony regarding his reasons for the project's delay.

3. This court declined to review the plaintiff's inadequately briefed claim that the trial court improperly refused to admit certain evidence proffered by the plaintiff; the plaintiff failed to identify with any specificity the exhibits he claims were improperly excluded and did not provide any legally relevant analysis as to why the court's alleged refusal to admit certain evidence was error.

4. The trial court's finding that the defendants did not receive a copy of the cancellation notice was not clearly erroneous; the court reasonably could have credited the defendant homeowner's testimony and it was within its province as trier of fact to make credibility determinations and to find the homeowner credible and the plaintiff not credible.

5. This court declined to review the plaintiff's unpreserved claim that the trial court should not have permitted the defendants' expert witness to testify because he was not qualified as an expert; the plaintiff did not file a motion in limine to preclude or limit the testimony of that witness nor did he object to the witness' testimony at trial.

6. The plaintiff could not prevail on his claim that the trial court failed to consider the defendants' duty to mitigate their damages; the defendants promptly sought of the services of V Co. to complete the work and the court expressly credited the testimony of the defendants' expert with respect to the amount of work necessary to complete the project and it implicitly found the expert's estimates and V Co.'s pricing reasonable by virtue of its damages calculation; moreover, the burden of proving the defendants' purported failure to mitigate rested with the plaintiff and he failed to present evidence beyond his argument that the pricing of V Co., the company the defendants hired to complete the work, was unreasonable.

7. The plaintiff could not prevail on his claim that the trial court erred with respect to its calculation of damages; the court's damages calculations

were supported by the evidence, and the court properly subtracted the unpaid balance due on the plaintiff's contract from the adjusted cost of completion based on V Co.'s estimate, to come to the total actual loss that it awarded in damages to the defendants.

8. There was no merit to the plaintiff's unpreserved claim of judicial bias and, under a comprehensive review of the record, reversal under the plain error doctrine was not appropriate.

Argued October 22, 2019—officially released August 25, 2020

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk, where the defendants filed a counterclaim; thereafter, the matter was tried to the court, *Hon. A. William Mottolese*, judge trial referee; judgment for the defendants on the complaint and on the counterclaim, from which the plaintiff appealed to this court. *Affirmed.*

*Arthur M. DeMattio*, self-represented, the appellant (plaintiff).

*Gregory J. Williams*, with whom, on the brief, was *Todd H. Lampert*, for the appellees (defendants).

*Opinion*

MOLL, J. The self-represented plaintiff contractor, Arthur M. DeMattio, appeals from the judgment of the trial court, rendered following a bench trial, in favor of the defendant homeowners, Robert Plunkett and Karen Plunkett, on the plaintiff's complaint and the defendants' counterclaim in the amount of $21,720.34. On appeal, the plaintiff's claims distill to whether the trial court erred by (1) concluding that the home improvement contract entered into among the parties (contract) was invalid and unenforceable against the defendants as a result of the contract's noncompliance with the Home Improvement Act (HIA), General Statutes § 20-418 et seq., (2) making numerous factual findings contrary to the evidence presented at trial, (3) failing to determine that the defendants did not mitigate their damages, (4) improperly calculating its damages award, and (5) acting in a biased manner toward the plaintiff.[1] We affirm the judgment of the trial court.

The trial court found the following facts. On January 12, 2015, the plaintiff and the defendants entered into the contract for the purpose of remodeling, and building an addition to, the defendants' kitchen. The contract price totaled $86,300, to be paid in six installments throughout the course of the renovations. Pursuant to the contract, the start date was March 9, 2015, with a completion date of May 11, 2015. The plaintiff did not begin work until May, 2015, and the specified completion date in the contract was not extended as a result of the delay.

On October 21, 2015, the plaintiff ceased work for the defendants. The plaintiff maintained that the defendants terminated him on that date; the defendants claimed that he simply "walked off the job." The plaintiff contended that he had completed the work entitling him to the fourth installment payment of $15,600, while the defendants maintained that they had overpaid the plaintiff based on, in their view, the lack of progress he had made by that point.

On January 19, 2016, the plaintiff commenced this action. The plaintiff's seven count complaint asserted the following claims against the defendants: breach of contract; account stated; quasi-contract; quantum meruit; unjust enrichment; fraud; and civil conspiracy. On March 1, 2016, the defendants filed an answer and special defenses, the first of which alleged that the contract violated the HIA in various ways, including the lack of the statutorily required notice of cancellation. The defendants also filed a two count counterclaim, asserting claims for a breach of contract and a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. On May 13, 2016, the plaintiff filed a reply to the defendants' special defenses, as well as an answer and special

defenses to the defendants' counterclaim, the reply to which was filed on July 12, 2017. On July 13, 2017, the defendants filed a request for leave to amend their counterclaim and appended the proposed amendment, which was deemed to have been filed by consent absent objection. On July 21, 2017, the plaintiff filed an answer and special defenses to the amended counterclaim.

The matter was tried to the court on August 6 and 30, and October 4, 2017.[2] Following the trial, on October 13, 2017, the plaintiff withdrew all counts of his complaint, with the exception of the breach of contract claim, relating to which the plaintiff sought compensatory damages in the amount of $15,920, comprising the fourth installment of $15,600 and the amount of $320 alleged to be owed for asbestos testing. Also on that date, the defendants withdrew their CUTPA claim against the plaintiff, leaving only the breach of contract claim. The parties submitted posttrial briefs.

On December 19, 2017, the court issued its memorandum of decision. With respect to the plaintiff's breach of contract claim, the court concluded that the contract failed to comply with the HIA, specifically, General Statutes § 42-135a, in six respects, which we discuss in part I of this opinion, rendering the contract unenforceable against the defendants. With respect to the defendants' breach of contract claim, the court found in favor of the defendants and awarded them $21,720.34 in compensatory damages with judgment rendered accordingly. On December 22, 2017, the plaintiff filed a motion for reargument and a motion for articulation. On January 2, 2018, the trial court denied both motions.

This appeal followed. Additional facts will be set forth as necessary.

I

The plaintiff first claims that the trial court erred in concluding that the contract was rendered unenforceable against the defendants as a result of the contract's noncompliance with the HIA.[3] The plaintiff principally argues that (1) the court erred in finding that the contract's use of the term "rescission"—instead of "cancellation," as required by the HIA, with respect to an owner's cancellation rights—was not merely technically noncompliant, and (2) with respect to the court's finding that the contract did not include a notice of cancellation, (a) the trial court erred in finding credible Karen Plunkett's testimony that the defendants did not receive a separate copy of the required notice of cancellation (which the plaintiff did not produce at trial) and (b) he located, posttrial, the original, signed contract with an endorsed, detachable notice of cancellation, which he contends this court should now consider. The defendants respond that the trial court correctly held that the contract was unenforceable against the defendants as a result of its noncompliance with the HIA, and that

such noncompliance was substantial and material. We agree with the defendants.[4]

In order to put the plaintiff's claim in its proper context, we begin our analysis by setting forth the standard of review and applicable legal principles. "The determination of the requirements of the HIA is a matter of statutory construction and, therefore, a matter of law over which this court's review is plenary." *Wright Bros. Builders, Inc.* v. *Dowling*, 247 Conn. 218, 226, 720 A.2d 235 (1998). "When construing a statute, [the court's] fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, [the court seeks] to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning . . . [General Statutes] § 1-2z directs [the court] first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Estate of Brooks* v. *Commissioner of Revenue Services*, 325 Conn. 705, 712–13, 159 A.3d 1149 (2017), cert. denied, U.S. , 138 S. Ct. 1181, 200 L. Ed. 2d 314 (2018).

The starting point of our statutory analysis under the HIA is General Statutes § 20-429,[5] which provides in relevant part: "(a) (1) (A) No home improvement contract shall be valid or enforceable against an owner unless it: (i) Is in writing, (ii) is signed by the owner and the contractor, (iii) contains the entire agreement between the owner and the contractor, (iv) contains the date of the transaction, (v) contains the name and address of the contractor and the contractor's registration number, (vi) *contains a notice of the owner's cancellation rights in accordance with the provisions of chapter 740*, (vii) contains a starting date and completion date, [and] (viii) is entered into by a registered salesman or registered contractor . . . .

"(c) The contractor shall provide and deliver to the owner, without charge, a completed copy of the home improvement contract at the time such contract is executed. . . .

"(e) *Each home improvement contract entered into shall be considered a home solicitation sale pursuant to chapter 740 and shall be subject to the requirements of said chapter* regardless of the location of the transaction or of the signing of the contract. . . .

"(f) Nothing in this section shall preclude a contractor

who has complied with subparagraphs (A) (i), (ii), (vi), (vii) and (viii) of subdivision (1) of subsection (a) of this section from the recovery of payment for work performed based on the reasonable value of services which were requested by the owner, provided the court determines that it would be inequitable to deny such recovery." (Emphasis added.) General Statutes § 20-429 (a) (1) (A), (c), (e), and (f).

Section 20-429 (a) (1) (A) (vi) and (e) incorporates by reference the provisions of chapter 740, the Home Solicitation Sales Act (HSSA), which is codified at General Statutes § 42-134 et seq. The relevant portion of the HSSA, set forth in General Statutes § 42-135a, provides in relevant part: "No agreement in a home solicitation sale shall be effective against the buyer if it is not signed and dated by the buyer or if the seller shall . . . (1) Fail to furnish the buyer with a fully completed receipt or copy of all contracts and documents pertaining to such sale at the time of its execution, which contract shall be in the same language as that principally used in the oral sales presentation and which shall show the date of the transaction and shall contain the name and address of the seller, and in immediate proximity to the space reserved in the contract for the signature of the buyer, or on the front page of the receipt if a contract is not used, and in boldface type of a minimum size of ten points, a statement in substantially the following form:

"YOU, THE BUYER, MAY CANCEL THIS TRANSACTION AT ANY TIME PRIOR TO MIDNIGHT OF THE THIRD BUSINESS DAY AFTER THE DATE OF THIS TRANSACTION. SEE THE ATTACHED NOTICE OF CANCELLATION FORM FOR AN EXPLANATION OF THIS RIGHT.

"(2) Fail to furnish each buyer, at the time such buyer signs the home solicitation sales contract or otherwise agrees to buy consumer goods or services from the seller, a completed form in duplicate, captioned 'NOTICE OF CANCELLATION,' which shall be attached to the contract or receipt and easily detachable, and which shall contain in ten-point boldface type the following information and statements in the same language as that used in the contract:

"NOTICE OF CANCELLATION

". . . (Date of Transaction)

"YOU MAY CANCEL THIS TRANSACTION, WITHOUT ANY PENALTY OR OBLIGATION, WITHIN THREE BUSINESS DAYS FROM THE ABOVE DATE.

\* \* \*

"I HEREBY CANCEL THIS TRANSACTION.

". . . . (Date)

". . . . (Buyer's Signature)

"(3) Fail, before furnishing copies of the 'Notice of Cancellation' to the buyer, to complete both copies by entering the name of the seller, the address of the seller's place of business, the date of the transaction, and the date, not earlier than the third business day following the date of the transaction, by which the buyer may give notice of cancellation. . . ." General Statutes § 42-135a (1) through (3).

"The HIA is a remedial statute that was enacted for the purpose of providing the public with a form of consumer protection against unscrupulous home improvement contractors. . . . The aim of the statute is to promote understanding on the part of consumers with respect to the terms of home improvement contracts and their right to cancel such contracts so as to allow them to make informed decisions when purchasing home improvement services." (Citation omitted.) *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 231. "While the purposes of the [HIA] are advanced by an interpretation that makes compliance with the requirements of § 20-429 (a) mandatory, it does not necessarily follow that advancement of the purposes also requires that the mandatory compliance with each subsection be technically perfect." Id.

Against this backdrop, we set forth the following additional factual findings and legal conclusions drawn by the trial court. The defendants signed and dated the contract, agreeing to its terms, on January 12, 2015, and the plaintiff signed and dated the contract on January 17, 2015. The contract contained the following provision relating to the notice of cancellation requirement, in this form:

"**Right of Rescission—**

"Under the law you have three business days to rescind this contract and receive a full refund of any money you have on deposit with the contractor.

"If you elect to refuse this right, and effectively speed up your job start by three business days, then please sign below, attesting to the fact that you wish to forego your three day right of rescission.

"Homeowner                 Date"

(Emphasis in original.) The spaces for the homeowner's signature and date were left blank. Although the plaintiff testified at trial that he provided the defendants with a separate, detachable copy of the notice of cancellation, he did not produce a copy at trial, and the court expressly credited the defendants' denial of having received a copy of such notice.

The court ultimately concluded that the contract failed to comply with the HIA, specifically, § 42-135a, in six respects. *First*, the notice used the term "rescission," rather than "cancellation," as prescribed by § 42-135a (1) and (2), and, as a result of the legal distinctions

between those terms (i.e., rescission being an equitable remedy), "[t]he substitution of one word for the other [was] therefore a material departure from the statutory requirement and [was] not merely a technical noncompliance." *Second*, the text of the notice does not substantially follow the language prescribed by subsection (1) or (2) of § 42-135a and is not written in boldface type of a minimum font size of ten points, as required. *Third*, the notice is neither signed nor dated, the latter omission of which is significant because the signature page bears two different dates, namely, January 12, 2015, for the defendants and January 17, 2015, for the plaintiff, leaving the defendants to determine which of the dates triggered the cancellation period. *Fourth*, the notice does not refer to an "attached notice of cancellation form for an explanation" of the right of cancellation. *Fifth*, because no separate notice was attached to the contract, as required by § 42-135a (2), there was no "easily detachable" copy that the defendants could mail or deliver to the plaintiff. *Finally*, a completed copy of all documents was not provided to the defendants, as required by § 42-135a (1), because the defendants were never given a separate, detachable copy of the notice. On the basis of the foregoing, the court concluded that such omissions and defects (1) were collectively more egregious than those in *Kronberg Bros., Inc.* v. *Steele*, 72 Conn. App. 53, 804 A.2d 239, cert. denied, 262 Conn. 912, 810 A.2d 277 (2002), in which this court concluded that a home improvement contract violated the HIA, and (2) could not be considered minor or merely technically noncompliant.

The plaintiff primarily relies on *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 231, for the proposition that compliance with the HIA does not need to be "technically perfect." According to the plaintiff, the distinction between the terms "rescission" and "cancellation" was of no significance. Additionally, although the notice was not signed and dated, he maintains that the date by which the transaction could be canceled could have been easily deduced from reading the contract. The plaintiff further avers that the missing detachable notice of cancellation was located after the trial.[6] In contrast, the defendants largely rely on *Kronberg Bros., Inc.* v. *Steele*, supra, 72 Conn. App. 53, for the proposition that the contract's noncompliance with the HIA was material. We examine these precedents in turn.

In *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 226, the defendant homeowners argued that the home improvement contract they entered into with the plaintiff did not comply with the HIA because "the plaintiff did not attach *two* copies of the notice of cancellation to the copy of the contract that it provided to [the homeowner], as required by § 42-135a (2), and did not enter the date of the transaction or the date by which the transaction could be canceled on the notice of cancellation, as required by § 42-135a (3)." (Emphasis

added.) However, "the alleged deviations from the precise specifications of § 42-135a (2) and (3) were of a minor and highly technical nature, and did not result in a lack of notice to the defendants that they had a right to cancel the contract within three days of the contract's signing." Id., 232. Specifically, the contractor complied with the HIA by furnishing one copy of the contract with an attached notice of cancellation to the homeowner, and one copy of the same to the homeowner's husband, who constituted an "owner" under the HIA. Id.; see also General Statutes § 20-419 (6). With respect to the contractor's failure to provide the required dates on the notice of cancellation, that information "easily could have been gleaned from even the most cursory review of the contract." Id., 233. Thus, our Supreme Court concluded that the contract satisfied the requirements of § 20-429 (a) and that the HIA did not preclude the plaintiff from enforcing the contract against the defendants. Id., 232–34.

In *Kronberg Bros.*, *Inc.* v. *Steele*, supra, 72 Conn. App. 60, this court distinguished *Wright Bros. Builders*, *Inc.*, and concluded that the defects with the contract at issue amounted to "material noncompliance" with the HIA's requirements. More precisely, "not only did the cancellation notice fail to contain the date of the transaction and the date by which the defendants could cancel the contract, the contract itself lacked a transaction date. Furthermore, the contract did not contain the required cancellation notice in immediate proximity to the space reserved in the contract for the signature of the buyer. Near the top of the second page of the contract, there was language that notified the defendants of their right to cancel the contract, but the language failed to comply with § 42-135a in both verbiage and location. The contract indicated a start date of October 6, 1997, but the contract was not signed by [the homeowner] until October 7, 1997." Id., 59. Such noncompliance "amounted to more than a mere technicality; it constitute[d] material noncompliance" with the HIA's requirements. Id., 59–60. Thus, this court concluded that the trial court properly determined that the contract violated the HIA. Id., 60.

Applying the foregoing principles to the present case, we conclude that the plaintiff's failures (1) to follow in any meaningful way the prescribed language and form of the cancellation notice and (2) to provide the defendants with a detachable notice of cancellation, as required by § 42-135a, amount to material noncompliance with the HIA.

First, with regard to the "right of rescission" contained in the contract, it is clear that the language and form thereof do not align, even in a loose sense, with the requirements of the "notice of cancellation" set forth in the HSSA. See General Statutes § 42-135a (1) and (2); *Kronberg Bros.*, *Inc.* v. *Steele*, supra, 72 Conn.

App. 59. Furthermore, pursuant to § 42-135a (1) and (2), a notice of cancellation must explain that the owner has three business days from the date of the transaction to cancel it. Here, the date by which the defendants could have cancelled the contract was, at best, ambiguous because the defendants signed the contract on a different date than the plaintiff, and the date by which the defendants could have cancelled was not otherwise made obvious in the contract. Compare *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 233 (cancellation notice that did not contain date by which homeowners could cancel contract deemed not in violation of HIA because transaction date was on first page of contract), with *Kronberg Bros., Inc.* v. *Steele*, supra, 59 (both cancellation notice and contract lacked transaction date).

Second, and more significantly, the plaintiff did not provide *any* detachable notice of cancellation to the defendants as required by the HSSA. See General Statutes § 42-135a (2) and (3). Pursuant to § 20-429 (a) (vi), a home improvement contract is unenforceable against an owner if it does not contain a notice of the homeowner's cancellation rights in accordance with the HSSA, which specifies, inter alia, that a duplicate copy of the notice of cancellation must be attached to the contract and easily detachable therefrom. See General Statutes § 42-135a (2); see also *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 227–28 ("the plain language of [the HSSA] requires home improvement contractors to furnish two copies of the notice of cancellation to the homeowners with whom they contract to undertake home improvement services by attaching two copies of the notice to the back of the homeowner's copy of the contract and that each of the copies specifies the date of the transaction and the date by which the contract may be canceled"). Here, as found by the trial court, no copy was furnished.

As one Superior Court decision aptly explained, "[w]ith regard to the contracts in this case, the plaintiff has failed to prove by a preponderance of the evidence that it has provided a copy of the 'Notice of Cancellation' in duplicate in accordance with § 42-135a (2) and (3). While a contractor need not strictly comply with the requirements under § 42-135a (2) and (3) so long as the owner can reasonably ascertain the date by which the contract can be canceled; see *Wright Bros. Builders, Inc.* v. *Dowling*, supra, 247 Conn. 231; there is no authority for the proposition that a contractor can completely fail to provide any copy of the 'Notice of Cancellation' whatsoever." *East Coast Custom Builders, LLC* v. *Bachman*, Superior Court, judicial district of New Haven, Docket No. CV-08-5003207-S (March 31, 2011). Because "[t]he requirement that a consumer is fully notified and understands his or her right to cancel a contract is central to the [HIA]"; *Kronberg Bros., Inc.* v. *Steele*, supra, 72 Conn. App. 60; the failure to provide

any detachable notice of cancellation—particularly in light of the other, previously discussed defects—cannot be said to be minor or of a highly technical nature. See also *Wadia Enterprises, Inc.* v. *Hirschfeld*, 27 Conn. App. 162, 166–67, 604 A.2d 1339 (failure of home improvement contract to provide that contract could be cancelled within three business days was "violative of the [HIA]"), aff'd, 224 Conn. 240, 618 A.2d 506 (1992).

In light of the foregoing, we conclude that the trial court properly determined that the contract violated § 42-135a of the HIA, rendering it unenforceable against the defendants.[7]

## II

The plaintiff next asserts a mélange of evidentiary challenges. Although the precise errors claimed are difficult to discern from his appellate briefs, they can largely be distilled as follows: the trial court erred in (1) finding that the plaintiff caused the delay in performance of the work, (2) refusing to admit into evidence several affidavits, records relating to weather conditions, building department inspection records, and "requested clarifications of inspections", (3) crediting the testimony of Karen Plunkett and not crediting the plaintiff's testimony, and (4) permitting, and then crediting, the testimony of Donald Panapada, a project manager at VAS Construction, Inc. (VAS). According to the plaintiff, had these errors not occurred, he would have prevailed on his breach of contract claim and the defendants would not have prevailed on their breach of contract claim. The defendants contend that, to the extent these issues were preserved, the court committed no error. We agree with the defendants and address each of the claimed errors in turn.[8]

## A

We first address the plaintiff's challenge to the court's finding that the plaintiff caused the delay in the completion of the work. The following additional facts found by the trial court are relevant to our consideration of the plaintiff's claim. The trial court distilled the defendants' breach of contract claim as essentially alleging that the plaintiff had failed to perform the work in a timely manner, thereby causing an unreasonable delay and damages. The contract provided that the plaintiff would begin work on March 9, 2015, and complete the work by May 11, 2015—approximately nine weeks. As found by the trial court, the work did not begin until May 18, 2015. The plaintiff's last day on the job was October 21, 2015. On or about that date, the plaintiff demanded from the defendants the fourth installment payment, pursuant to the contract, of $15,600. The defendants refused to pay that amount because, in their view, the plaintiff had not completed the work entitling him to it. The parties presented contradictory testimony as to whether the defendants then terminated the plaintiff

or whether the plaintiff "walked off the job." Shortly thereafter, on November 16, 2015, the defendants hired VAS to finish the work. Panapada estimated that the work left by the plaintiff was only 50 percent complete. The contract with VAS provided a completion date of January 31, 2016.

The trial court concluded that, although the contract between the plaintiff and defendants did not specify that time was of the essence, it evidenced an intention by the parties to have the work completed by the specified date or within a reasonable time thereafter. The contract described the start and end dates of the project as "safe dates" and stated that the start date may be "significantly expedited" to begin the addition related portion of the work. The court next concluded that completing only 50 percent of the project between May and October, 2015, when the contract called for nine weeks of total work beginning in March, 2015, resulted in a material breach of the contract so as to excuse the defendants from remitting the fourth installment payment. The court did not credit the plaintiff's various explanations for the delay.[9]

"The trial court's findings are binding upon this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"In applying the clearly erroneous standard of review, [a]ppellate courts do not examine the record to determine whether the trier of fact could have reached a different conclusion. Instead, we examine the trial court's conclusion in order to determine whether it was legally correct and factually supported. . . . This distinction accords with our duty as an appellate tribunal to review, and not to retry, the proceedings of the trial court. . . .

"[I]n a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . The credibility and the weight of expert testimony is judged by the same standard, and the trial court is privileged to adopt whatever testimony [it] reasonably believes to be credible. . . . On appeal, we do not retry the facts or pass on the credibility of witnesses." (Citations omitted; internal quotation marks omitted.) *FirstLight Hydro Generating Co.* v. *Stewart*, 328 Conn. 668, 679–80, 182 A.3d 67 (2018).

In light of this deferential standard of review, we conclude that the trial court's finding supporting its conclusion that the plaintiff materially breached the

contract by a material delay in performance was not clearly erroneous. Although the plaintiff argues that the court did not take into account his reasons for the project's delay and improperly weighed witness credibility on the explanation for these reasons, the court ultimately found them to be unpersuasive in light of the other evidence presented. Specifically, the trial court accorded great weight to Panapada's testimony that the project was only 50 percent complete when VAS took over the work in November, 2015. Indeed, the court explicitly credited Panapada's testimony that there were eight to ten weeks of work remaining when the plaintiff ceased work in October, 2015, over the plaintiff's testimony that there were four weeks left. The court found that the plaintiff did not sufficiently explain why the project was only halfway completed when he worked three and one-half times longer than provided by the contract.

Our review of the record indicates that these factual findings were properly grounded in the evidence presented at trial. The court did not find the plaintiff's explanation for the delay in the commencement of the project to be reasonable in light of the other evidence presented. Further still, the trial court's calculations that the plaintiff could manage to complete only one-half of the project in thirty-two and one-half weeks, between March 9—when the contract provided work would begin—and October 21, 2015, was supported by the contract and the testimony elicited at trial.[10] The court also considered the defendants' frustrations as to the length of the project and stated that the defendants' version of events was more credible than the plaintiff's. Although the plaintiff provided the trial court with his own evidence to explain the delays of the project, "[t]he determination of a witness' credibility is the special function of the trial court. This court cannot sift and weigh evidence." (Internal quotation marks omitted.) *State* v. *Thompson*, 307 Conn. 567, 575, 57 A.3d 323 (2012). Therefore, the findings related to the credibility of the witnesses and the weight afforded to competing evidence were supported by the evidence and were not clearly erroneous. See *Nutmeg Housing Development Corp.* v. *Colchester*, 324 Conn. 1, 12, 151 A.3d 358 (2016).

B

The plaintiff's second contention is that the trial court improperly refused to admit certain evidence proffered by him, including several affidavits, records relating to weather conditions, building department inspection records, and "requested clarifications of inspections." This contention requires little discussion.

As a threshold matter, the plaintiff has not identified with any specificity (e.g., by citing to a particular numbered plaintiff's exhibit that was marked for identification) those exhibits that he claims were improperly excluded, and the trial transcript excerpts cited by the

plaintiff in connection with this claim do not provide the necessary clarity.[11] Moreover, the plaintiff provides virtually no legally relevant analysis as to why the court's alleged refusal to admit such evidence was in error. The plaintiff only vaguely references an agreement between counsel to waive hearsay objections and relies on instances in which the trial court purportedly allowed the admission of hearsay evidence.[12] Accordingly, we conclude that this particular contention by the plaintiff is inadequately briefed, and we decline to review it. See *Artiaco* v. *Commissioner of Correction*, 180 Conn. App. 243, 248–49, 182 A.3d 1208 ("Ordinarily, [c]laims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . . [T]he dispositive question in determining whether a claim is adequately briefed is whether the claim is reasonably discernible [from] the record . . . ." (Internal quotation marks omitted.)), cert. denied, 328 Conn. 931, 184 A.3d 758 (2018).

C

The plaintiff next argues at length that the court improperly credited the testimony of Karen Plunkett and failed to credit his testimony. In support of his claim, the plaintiff cites not only numerous examples from the trial transcript in which, in his view, Karen Plunkett was lying, but also examples that, in his view, highlight his own veracity. Against this backdrop, the plaintiff seems to suggest that the trial court was bound to reject all of Karen Plunkett's testimony and that, as a result, the court's express finding that it credited the defendants' denial of having received a copy of the cancellation notice required by the HIA; see part I of this opinion; was clearly erroneous. This contention can be disposed of in short order.

"It is well established that, even if there are inconsistencies in a witness' testimony, [i]t is the exclusive province of the trier of fact to weigh conflicting testimony and make determinations of credibility, crediting some, all or none of any given witness' testimony. . . . It is not our role to reevaluate the credibility of witnesses or to overturn factual findings of a [trial] court unless they are clearly erroneous. . . . If there is any reasonable way that the [trier of fact] might have reconciled the conflicting testimony before [it], we may not disturb [its] [credibility determination]." (Citations omitted; internal quotation marks omitted.) *Wall Systems, Inc.* v. *Pompa*, 324 Conn. 718, 741, 154 A.3d 989 (2017).

We conclude that, on the basis of the testimony before it, and consistent with the lack of a copy of a cancellation notice in evidence, the trial court, within its exclusive province as the trier of fact, reasonably

could have credited the testimony of Karen Plunkett and found that the contract did not contain the required cancellation notice. Accordingly, we leave undisturbed that factual finding.

## D

Finally, the plaintiff argues that the court should not have permitted Panapada, the defendants' expert witness, to testify because he was not qualified as an expert. We decline to consider this claim because the plaintiff did not preserve it before the trial court.

"[O]ur rules of practice require a party, as a prerequisite to appellate review, to distinctly raise its claim before the trial court. . . . Practice Book § 60-5 ('[t]he court shall not be bound to consider a claim unless it was distinctly raised at trial or arose subsequent to trial'). For that reason, we repeatedly have held that 'we will not decide an issue that was not presented to the trial court. To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge.' " (Citation omitted.) *Welsh* v. *Martinez*, 157 Conn. App. 223, 237 n.9, 114 A.3d 1231, cert. denied, 317 Conn. 922, 118 A.3d 63 (2015); see *Voloshin* v. *Voloshin*, 12 Conn. App. 626, 629–30, 533 A.2d 573 (1987) (declining to review claim that trial court erred by crediting appraisal of plaintiff's expert witness when defendant neither objected to testimony of plaintiff's expert witness nor challenged his qualifications as expert).

In the present case, on July 6, 2017, the defendants disclosed Panapada as an expert witness with regard to the cost of completing the renovation work at the defendants' home. The plaintiff did not file a motion in limine to preclude or limit that testimony, nor did he object to Panapada's testimony at trial or request to conduct a voir dire of Panapada. We conclude that the plaintiff failed to preserve this claim before the trial court, and, therefore, we decline to review it.

## III

The plaintiff next claims that the trial court failed to consider the defendants' duty to mitigate their damages. The plaintiff largely asserts that the defendants were required to obtain additional quotes with respect to completing the renovation, rather than retaining VAS, whose pricing the plaintiff contends was unreasonably high. The defendants maintain that we should decline to review this claim because the plaintiff did not file a postappeal motion for articulation seeking an explication regarding the court's treatment of the defendants' duty to mitigate and, therefore, he has failed to provide an adequate record for review. Although the defendants overlook the directive of Practice Book § 61-10 (b), namely, that "[t]he failure of any party on appeal to seek articulation pursuant to Section 66-5 shall not be the sole ground upon which the court declines to review

any issue or claim on appeal," we ultimately reject the plaintiff's claim on the merits.

The following facts and procedural history are relevant to our resolution of this claim. In the plaintiff's posttrial brief, he argued, in part, that the defendants were not entitled to recover on their breach of contract claim because they failed to mitigate their damages. In support of this argument, the plaintiff maintained that the defendants "hired the first contractor they met at a rate that far exceeded that which the plaintiff had agreed to charge them for the same work." In its memorandum of decision, the trial court did not expressly address the duty to mitigate damages. The court concluded that the defendants had prevailed on their counterclaim and were entitled to damages in the amount of $21,720.34. On December 22, 2017, before he had filed this appeal, the plaintiff filed a motion for articulation in which he sought an articulation of, inter alia, "the legal basis by which the failure of the defendants to engage in any effort to mitigate their damages was not considered in the memorandum of decision as reducing their monetary claim to damages . . . ." The trial court denied that motion on January 2, 2018. No other motion practice directed to the memorandum of decision took place before or after the plaintiff filed this appeal.

We begin our analysis by addressing the defendants' contention that this claim is not reviewable. The defendants principally rely on this court's decision in *Brycki* v. *Brycki*, 91 Conn. App. 579, 594, 881 A.2d 1056 (2005), for the proposition that we should decline to review the plaintiff's claim because, after filing this appeal, he failed to file a motion for articulation pursuant to Practice Book § 66-5,[13] specifically requesting that the trial court address the mitigation of damages issue, the denial of which would have been subject to appellate review upon the filing of a motion for review pursuant to Practice Book § 66-7. See also *Swanson* v. *Groton*, 116 Conn. App. 849, 865, 977 A.2d 738 (2009) ("If the trial judge denies the motion for articulation, the appellant has a remedy by way of motion for review, which may be filed with this court pursuant to Practice Book § 66-7.[14] This motion for review specifically can be utilized only for those motions for articulation filed pursuant to § 66-5." (Footnote added.)).

Simply put, the defendants' position that the plaintiff's claim is unreviewable overlooks Practice Book § 61-10, which provides in relevant part: "(b) The failure of any party on appeal to seek articulation pursuant to Section 66-5 *shall not be the sole ground upon which the court declines to review any issue or claim on appeal.* . . ." (Emphasis added.) The cases on which the defendants rely in support of their position were decided *prior* to the adoption of Practice Book § 61-10 (b), which became effective on January 1, 2013. See *State* v. *Walker*, 319 Conn. 668, 678, 126 A.3d 1087 (2015).

Accordingly, we reject the defendants' contention that we should decline to review the plaintiff's claim solely on the basis of his failure to file a motion for articulation after he filed his appeal and, therefore, we turn to the plaintiff's claim on the merits, having determined that an articulation is not necessary.

The principles underlying the duty to mitigate damages are well settled. "A party being damaged has an obligation to make reasonable efforts to mitigate its damages, and the question of what constitutes such efforts is a question of fact that is subject to the clearly erroneous scope of review." *Connecticut Light & Power Co.* v. *Westview Carlton Group, LLC*, 108 Conn. App. 633, 642, 950 A.2d 522 (2008). "We have often said in the contracts and torts contexts that the party receiving a damage award has a duty to make reasonable efforts to mitigate damages. . . . What constitutes a reasonable effort under the circumstances of a particular case is a question of fact for the trier. . . . Furthermore, we have concluded that the breaching party bears the burden of proving that the nonbreaching party has failed to mitigate damages." (Internal quotation marks omitted.) *Webster Bank, N.A.* v. *GFI Groton, LLC*, 157 Conn. App. 409, 424, 116 A.3d 376 (2015).

Although the court did not expressly reject the plaintiff's failure to mitigate argument, it found for the defendants on their breach of contract claim and awarded damages thereon in the amount of $21,720.34, necessarily rejecting the plaintiff's argument that the defendants could not sustain their burden to prove damages as a result of their failure to mitigate. After a careful review of the record, we are not persuaded that the trial court's inherent rejection of the plaintiff's argument that the defendants improperly failed to mitigate their damages was in error. The defendants promptly sought out VAS' services after recognizing the deficiencies in the plaintiff's work and, as we have explained, the trial court expressly credited the testimony of Panapada, a project manager at VAS, with respect to the amount of work necessary to complete the project. Specifically, the court found Panapada's testimony that approximately 50 percent of the work was completed by the plaintiff to be "unbiased and reliable" and accepted it as an accurate approximation. The court also credited Panapada's testimony over the plaintiff's regarding the eight to ten week time frame to complete the work. The court characterized the project as "a continuum of delay," which permeated the plaintiff's work on the project. There also was evidence that VAS sought to remedy shortcomings in the plaintiff's work that went beyond "trifling particulars" and "minor deviations" from the original contract. By virtue of its damages calculations, the court implicitly found Panapada's estimates and VAS' pricing to be reasonable.

Moreover, the burden of proving the defendants' pur-

ported failure to mitigate damages rested with the plaintiff, as the breaching party. See *Webster Bank, N.A.* v. *GFI Groton, LLC*, supra, 157 Conn. App. 424. The only evidence that the plaintiff presented relating to his argument that VAS' pricing was unreasonably high was his own testimony, which the trial court was free not to accept. The plaintiff could have presented, but did not present, expert testimony or other evidence with respect to the reasonableness of VAS' pricing. Finally, the plaintiff has not cited to any authority—and we are not aware of any—standing for the proposition that a nonbreaching party is required under these circumstances to obtain multiple bids to complete the work left undone by the breaching party. Simply put, the plaintiff did not satisfy his burden to demonstrate that the defendants failed to mitigate their damages.

In sum, we cannot conclude that the trial court's implicit rejection of the plaintiff's argument that the defendants failed to mitigate their damages was in error. See *Hilario Truck Center, LLC* v. *Kohn*, 190 Conn. App. 443, 448–49, 210 A.3d 678 (2019) ("It is a fundamental principle of appellate review that our appellate courts do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts. . . . [T]he trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary." (Internal quotation marks omitted.)). In light of the foregoing, the plaintiff's claim fails.

IV

The plaintiff also claims that the trial court erred with respect to its calculation of damages awarded to the defendants. First, the plaintiff contends that in his opinion, based on his review of the breakdown in costs submitted by VAS to the defendants, VAS' proposal was excessive and/or inflated. Second, the plaintiff contends that the trial court utilized an incorrect amount relating to hardware, screens, and grills, i.e., $867, arguing that such amount, if included at all, should have been $514. We are unpersuaded.

We begin by setting forth the standard of review and relevant legal principles. "The [injured party] has the burden of proving the extent of the damages suffered. . . . Although the [injured party] need not provide such proof with [m]athematical exactitude . . . the [injured party] must nevertheless provide sufficient evidence for the trier to make a fair and reasonable estimate. . . . As we have stated previously, the determination of damages is a matter for the trier of fact. . . . Accordingly, we review the trial court's damages award under the clearly erroneous standard, under which we overturn a finding of fact when there is no evidence in the record to support it . . . or when although there is

evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *Naples* v. *Keystone Building & Development Corp.*, 295 Conn. 214, 224–25, 990 A.2d 326 (2010).

"It is axiomatic that the sum of damages awarded as compensation in a breach of contract action should place the injured party in the same position as he would have been in had the contract been performed. . . . The injured party, however, is entitled to retain nothing in excess of that sum which compensates him for the loss of his bargain. . . . Guarding against excessive compensation, the law of contract damages limits the injured party to damages based on his actual loss caused by the breach. . . . The concept of actual loss accounts for the possibility that the breach itself may result in a saving of some cost that the injured party would have incurred if he had had to perform. . . . In such circumstances, the amount of the cost saved will be credited in favor of the wrongdoer . . . that is, subtracted from the loss . . . caused by the breach in calculating [the injured party's] damages. . . . It is on this ground that . . . when an owner receives a defective or incomplete building, any part of the price that is as yet unpaid is deducted from the cost of completion that is awarded to him. . . . Otherwise, the owner would be placed in a better position than full performance would have put him, thereby doubly compensating him for the injury occasioned by the breach." (Internal quotation marks omitted.) *Hees* v. *Burke Construction, Inc.*, 290 Conn. 1, 7–8, 961 A.2d 373 (2009).

Our review of the record indicates that the trial court's damages calculations were supported by the evidence presented at trial. With respect to the plaintiff's first contention, notwithstanding the plaintiff's claim throughout his principal appellate brief that VAS provided an unreasonably high cost of completion, we have already explained that the trial court was free to weigh that evidence and the accompanying testimony from Panapada. Further, the evidence at trial established that VAS completed the work in accordance with the plaintiff's original contract, with the exception of certain items for which the trial court accounted in its damages calculations.

With respect to the plaintiff's second contention, we conclude that the trial court's use of the amount of $867.34 in connection with the cost of window hardware and screens was not clearly erroneous. That figure, predicated on the court's finding that the plaintiff impermissibly took those items from the defendants' home when he left the job site, was supported by the evidence at trial and, therefore, was not clearly erroneous. See *Nikola* v. *2938 Fairfield, LLC*, 147 Conn. App. 681, 685, 83 A.3d 1170 (2014).

Finally, contrary to the plaintiff's position, the court properly calculated the defendants' damages by subtracting the unpaid balance due on the plaintiff's contract from the adjusted cost of completion based on the VAS estimate for a total actual loss of $21,720.34. See *Hees* v. *Burke Construction, Inc.*, supra, 290 Conn. 8.

V

The plaintiff's final claim is that the trial court exhibited a pattern of judicial bias against him throughout the trial. The defendants maintain that this claim is not reviewable because it was raised for the first time on appeal and that reversal under the plain error doctrine otherwise is not appropriate.[15] We agree with the defendants.

It is well settled that "[c]laims alleging judicial bias should be raised at trial by a motion for disqualification or the claim will be deemed to be waived." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 692, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000); *Cameron* v. *Cameron*, 187 Conn. 163, 168, 444 A.2d 915 (1982). We review, however, an unpreserved claim of judicial bias under the plain error doctrine. See *Knock* v. *Knock*, 224 Conn. 776, 792–93, 621 A.2d 267 (1993). A claim of judicial bias "strikes at the very core of judicial integrity and tends to undermine public confidence in the established judiciary. . . . No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. If he departs from this standard, he casts serious reflection upon the system of which he is a part. A judge is not an umpire in a forensic encounter. . . . He is a minister of justice. . . . He may, of course, take all reasonable steps necessary for the orderly progress of the trial. . . . In whatever he does, however, the trial judge should be cautious and circumspect in his language and conduct. . . . A judge should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties or the issues before him. . . . A judge, trying the cause without a jury, should be careful to refrain from any statement or attitude which would tend to deny [a litigant] a fair trial. . . . It is his responsibility to have the trial conducted in a manner which approaches an atmosphere of perfect impartiality which is so much to be desired in a judicial proceeding." (Citations omitted; internal quotation marks omitted.) *Cameron* v. *Cameron*, supra, 168–69. "The standard to be employed is an objective one . . . . Any conduct that would lead a reasonable [person] knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned is a basis for the judge's disqualification." (Internal quotation marks omitted.) *Statewide Grievance Committee* v. *Burton*,

299 Conn. 405, 416, 10 A.3d 507 (2011).

In support of his claim of judicial bias, the plaintiff largely relies on a compilation of his other appellate claims, which we have found unavailing, as discussed previously in this opinion. The plaintiff also points to several additional instances of purportedly improper remarks and/or rulings made by the trial judge. These instances include the trial court stating that the plaintiff's motions for articulation and for reargument "constitute[d] a wholesale attack on the factual findings made by the court", allowing a witness to testify as to the interpretation of a payment term in the contract, and making certain remarks from the bench. On the basis of our comprehensive review of the record, we conclude that the plaintiff's claim that the trial court acted in a biased manner against him is without merit.

The judgment is affirmed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The plaintiff's arguments are presented in a different order in his principal appellate brief.

[2] The plaintiff was represented by counsel at trial.

[3] In so doing, the plaintiff essentially challenges the court's finding in favor of the defendants on their first special defense, specifically, that the contract violated the notice of cancellation requirements of the HIA.

[4] We note that "[a] contract is subject to the requirements of the HIA if it constitutes an agreement between a contractor and an owner for the performance of a home improvement." (Internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso*, 232 Conn. 666, 676, 657 A.2d 1087 (1995). There is no dispute as to whether the HIA applies to the contract in this case; rather, the dispute focuses on whether the contract's noncompliance with HIA was merely technical.

[5] Although § 20-429 has been the subject of two amendments since 2015, the year in which the contract between the plaintiff and the defendants was signed; see Public Acts 2016, No. 16-35, § 3, and Public Acts 2017, No. 17-48, § 18; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 20-429.

[6] The plaintiff contends that he did not produce the detachable notice of cancellation page at trial because he believed it had been destroyed in a storage facility flooding. After filing this appeal, the plaintiff filed two motions with this court to supplement his appendix whereby he sought to add, inter alia, a copy of the contract with an accompanying detachable notice. Both motions were denied by this court. "As an appellate court, we are limited to the record before us in deciding the merits of an appeal." *In re Amanda A.*, 58 Conn. App. 451, 461, 755 A.2d 243 (2000). Thus, the record before us does not include any detachable notice of cancellation.

[7] We pause briefly to make clear what we do not purport to decide. The trial court explained that the use of the term "rescission," rather than "cancellation" as required by the HIA, resulted in material noncompliance with § 42-135a (1) and (2) because "[a] lay person, untrained in the law, whom the HIA was designed to protect, could not be expected to be familiar with the equitable doctrine of rescission but much more likely would be expected to understand the common, ordinary word 'cancellation.'" The court expressly concluded that "[t]he substitution of one word for the other is therefore a material departure from the statutory requirement and is not merely a technical noncompliance." Because our conclusion does not rest on this distinction, we leave for another day whether the use of the term "rescission," instead of "cancellation," in a notice of cancellation, without more, would amount to material noncompliance with the HIA.

[8] At this juncture, two points require a brief discussion. First, for the reasons explained in part I of this opinion, the contract was unenforceable against the defendants by the plaintiff as a result of the contract's noncompliance with the HIA—a conclusion that is unaffected by the plaintiff's eviden-

tiary claims. We therefore examine these claims in the context of challenging the judgment rendered in favor of the defendants on their breach of contract counterclaim.

Second, it is helpful to explain why the defendants are not barred from recovering damages on their breach of contract counterclaim even though that contract has been rendered unenforceable against them by the HIA. In *Hees* v. *Burke Construction*, *Inc.*, 290 Conn. 1, 10, 961 A.2d 373 (2009), our Supreme Court held that "in a breach of contract case brought by a homeowner against a contractor, § 20-429 (a) does not preclude a trial court from reducing the homeowner's damages by the amount left unpaid under the contract." Although the contractor in *Hees* was barred by the HIA from recovering contract damages from the homeowners, they nevertheless could recover damages from the contractor, albeit by a reduced amount. Id., 15–17. Thus, pursuant to our application of *Hees*, it is permissible, in the context of § 20-429 (a), for a homeowner to prevail on a breach of contract claim based on a contract deemed otherwise unenforceable by the contract's noncompliance with the HIA. See *Hees* v. *Burke Construction*, *Inc.*, supra, 18 ("The plaintiffs, in other words, simultaneously claimed that the contract was enforceable to support their breach of contract claim but unenforceable, pursuant to § 20-429 (a), with respect to the contractor's counterclaims. This is a valid *dual* argument." (Emphasis in original.)) (*Schaller*, *J.*, concurring).

[9] Our review of the plaintiff's principal appellate brief and reply brief reveals that, with respect to the defendants' breach of contract claim, he challenges only the trial court's factual findings in rendering that judgment. "Although a finding of breach of contract is subject to the clearly erroneous standard of review, whether the court chose the correct legal standard to initially analyze the alleged breach is a question of law subject to plenary review." *Western Dermatology Consultants*, *P.C.* v. *VitalWorks*, *Inc.*, 146 Conn. App. 169, 180, 78 A.3d 167 (2013), aff'd, 322 Conn. 541, 153 A.3d 574 (2016). The plaintiff does not advance any legal argument or analysis or cite any relevant case law regarding the court's legal conclusions. That is, the plaintiff does not appear to challenge the trial court's legal conclusion that his material breach of the contract resulting from delay in performance excused the defendants from making the remaining installment payments.

"Although we allow pro se litigants some latitude, the right of self-representation provides no attendant license not to comply with relevant rules of procedural and substantive law." (Internal quotation marks omitted.) *Oliphant* v. *Commissioner of Correction*, 274 Conn. 563, 570, 877 A.2d 761 (2005). Consequently, even if we could discern a proffered legal basis to challenge the trial court's conclusion that the defendants prevailed on their breach of contract claim, "[w]here the parties cite no law and provide no analysis of their claims, we do not review such claims." (Internal quotation marks omitted.) *Jackson* v. *Water Pollution Control Authority*, 278 Conn. 692, 711, 900 A.2d 498 (2006). Therefore, because the court's factual findings were not clearly erroneous, its conclusion that, based on those facts, the plaintiff materially breached the contract must be affirmed.

[10] The plaintiff cursorily asserts that the purported delays cited by the trial court were "simply outlandish." Although the trial court stated that the plaintiff did not begin work until May *18*, 2015, the plaintiff testified that he commenced work on May *28*, 2015. Karen Plunkett also testified that the plaintiff began work on May 28, 2015. At another point in its memorandum of decision, the court stated that it "must determine whether the delay in completion from May *11* to October 21 was reasonable where the job was only approximately 50 percent complete at that point." Our review of the record as a whole indicates that these minor discrepancies were not material to the trial court's conclusion that the plaintiff breached the contract by his lack of substantial performance.

[11] Those excerpts merely reflect (1) certain testimony of Karen Plunkett containing no references to exhibits, (2) a proffer by the plaintiff's trial counsel of a certain invoice not produced during discovery and counsel's withdrawal of the proposed exhibit, and (3) the court striking as hearsay certain testimony of the plaintiff that was based on his review of National Weather Service records.

[12] The plaintiff claims that the trial court improperly admitted hearsay testimony from Karen Plunkett. The record reveals, however, that the plaintiff's trial counsel expressly waived his hearsay objection with respect to the portion of Karen Plunkett's testimony that the plaintiff now contends was inadmissible.

[13] Practice Book § 66-5 provides in relevant part: "A motion seeking . . . an articulation or further articulation of the decision of the trial court shall

be called a motion for rectification or a motion for articulation, whichever is applicable. Any motion filed pursuant to this section shall state with particularity the relief sought and shall be filed with the appellate clerk. . . .

"The sole remedy of any party desiring the court having appellate jurisdiction to review the trial court's decision on the motion filed pursuant to this section or any other correction or addition ordered by the trial court during the pendency of the appeal shall be by motion for review under Section 66-7. . . .

"Any motion for rectification or articulation shall be filed within thirty-five days after the delivery of the last portion of the transcripts or, if none, after the filing of the appeal, or, if no memorandum of decision was filed before the filing of the appeal, after the filing of the memorandum of decision. . . ."

[14] Practice Book § 66-7 provides in relevant part: "Any party aggrieved by the action of the trial judge regarding rectification of the appeal or articulation under Section 66-5 may, within ten days of the issuance of notice by the appellate clerk of the decision from the trial court sought to be reviewed, file a motion for review with the appellate clerk, and the court may, upon such a motion, direct any action it deems proper. . . ."

[15] It is undisputed that the plaintiff did not present a claim of judicial bias at trial.

_____